**JACKSON v. UNITED STATES.**

**Civ. No. 1892.**

District Court, N. D. Texas,
Dallas Division.

March 15, 1946.

Chaney & Davenport, of Dallas, Tex., for plaintiff.

William Cantrell, Jr., Asst. Atty. Gen., for defendant.

ATWELL, District Judge.

In 1943 the United States Army was in need of a large quantity of lumber for additional buildings at Kelly Field, San Antonio, Texas. That fact was made known and a purchase was allocated to the plaintiff. The lumber which the plaintiff was selling was to come from the interior of the Republic of Mexico via Laredo to Kelly Field, both within Texas and about 150 miles apart.

On July 3, 1943 a written contract was drawn by the proper Army officer and presented to the plaintiff for acceptance and to the United States for acceptance by the Air Corps contracting officer. Each of the parties accepted.

The contract is short but high peaks in the following sentences: "The Government's Order. Please furnish the following on the terms specified on both sides of the page and on the continuation sheets, if any, attached hereto, including delivery f.o.b." (this being evidently a regularly printed form, followed by a blank, upon which was the language which follows this parenthesis) "destination." ("Freight collect from Laredo, Texas.") Acceptance must be received by the Government within 30 days after the date as first above written. Methods of presenting invoices or vouchers, and of giving notice of and making shipments, shall be as indicated herein and/or as directed by the contracting officer. Minimum wages under the Walsh-Healey Act, 41 U.S.C.A. § 35 et seq., are "Applicable on this contract." Schedule of delivery: Number procured on U. S. Engineers allocation AA 26347. Terms net. "In accordance with the SP EC. CCE 104. 30–45 day delivery. AA–2K priority." Then follows a specification of different articles of lumber totaling in value $248,677. Then the contractor's acceptance.

"Accepted this 3rd day of July, 1943.
"George Jackson Co., Contractor.
"By George A. Jackson,
"Title, owner."

On the other side of that acceptance is this:

"United States of America by John C. Allen, (both written and printed.)
"Title, Major, Air Corps Contracting Officer."

Immediately after the letters "f.o.b." there is a parenthesis which I have placed there. That parenthesis calls attention to the fact that the contract is on a regularly printed form, and that after the letters "f.o.b." there was a blank, on which was typed "destination", so that the completed sentence is, "f.o.b. destination," to which was added in typewriting the next sentence, which was in parenthesis, and which

is as follows: "Freight collect from Laredo, Texas."

It is the juxtaposition of this phrase with the phrase, "f. o. b. destination," about which the plaintiff and the defendant disagree.

The total contract price for what was sold by Jackson to the Government was $248,677. This was paid after the deduction of $4,146.66, which was the amount of the freight on the lumber from Laredo to Kelly Field. Jackson then brought this suit to recover the amount that he claims was unjustly deducted from the agreed price.

The parties stipulated the facts and all of the negotiations that were covered in writing between the parties, including the purchase allocation, have been made a part of the record, together with some oral testimony. From them, the foregoing is found as the facts.

The picture may be slightly more interesting if the reader pictures the large quantity sold, which was coming from the interior of a sister Republic, and which necessitated speed, accuracy, fidelity and efficient delivery. The picture must also be tinged with the knowledge that Government shipments on United States railways have certain priority and certain freight reduction privileges as well as certain re-routing rights.

As to the law, it, too, is simple. Practically all of the papers including the purchase allocation and the contract itself having been drawn by the defendant, requires the construer to take that into consideration, even though the Government is a party. Likewise, construction will not be indulged unless there is a patent ambiguity.

The meaning of "f.o.b." is so well known that it may not even apologetically be again defined. But when it is at once followed by the statement that freight is to be collected from a certain point, the court must give effect to that agreement of the parties. After all, it is the intention of the parties to a contract which governs. It is difficult to assume that that phrase was placed in the contract without some force, meaning, or reason. If we read the contract to mean that the lumber is to reach Kelly Field free from any cartage, drayage, loading, or freight charges, save and except the freight charges from Laredo to Kelly Field, then we give expression to all of the written contract that the parties accepted and agreed to fulfill. To deprive the plaintiff of the effectiveness of that sentence is to take from him that which was deliberately placed in the contract by its drawer. After it was so placed, it became a part of the contract that was accepted by the buyer and the seller. That construction must be followed by the court. It is simple justice. That construction also recognized the right of the Government to profit by a reduction of freight, and to divert the shipment in accordance with its needs.

Judgment must go for the plaintiff for $4,146.66.